| ATTORNEY OR PARTY WITHOUT ATTORNEY (Name, State Bar number, and address): | | FOR COURT USE ONLY |
|---|---|---|
| Jeffrey D. Kaliel (SBN 238293); Sophia G. Gold (SBN 307971) Kaliel Gold PLLC 1100 15th Street NW, 4th Floor, Washington, D.C. 20005 | | Rec'd 4.8.21 C! JBlakely n marcha 4.8.21/rd RECEIVED CIVIL DROP BOX 2021 MAR 11 AM 11:46 GORDON D SCHABER COURTHOUSE SUPERIOR COURT OF CALIFORNIA SACRAMENTO COUNTY |
| TELEPHONE NO.: (202) 350-4783  FAX NO. (Optional): ATTORNEY FOR (Name): Plaintiff | | |

SUPERIOR COURT OF CALIFORNIA, COUNTY OF SACRAMENTO
STREET ADDRESS: 720 9th Street
MAILING ADDRESS: 720 9th Street
CITY AND ZIP CODE: Sacramento, CA 95814
BRANCH NAME: Gordon D. Schaber Courthouse

CASE NAME:
RONALD ORTEGA v. CHICK-FIL-A, INC.

| CIVIL CASE COVER SHEET | | Complex Case Designation | | CASE NUMBER: |
|---|---|---|---|---|
| [x] Unlimited (Amount demanded exceeds $25,000) | [ ] Limited (Amount demanded is $25,000) | [ ] Counter [ ] Joinder Filed with first appearance by defendant (Cal. Rules of Court, rule 3.402) | | JUDGE: DEPT.: |

*Items 1–6 below must be completed (see instructions on page 2).*

1. Check **one** box below for the case type that best describes this case:

**Auto Tort**
[ ] Auto (22)
[ ] Uninsured motorist (46)

**Other PI/PD/WD (Personal Injury/Property Damage/Wrongful Death) Tort**
[ ] Asbestos (04)
[ ] Product liability (24)
[ ] Medical malpractice (45)
[ ] Other PI/PD/WD (23)

**Non-PI/PD/WD (Other) Tort**
[x] Business tort/unfair business practice (07)
[ ] Civil rights (08)
[ ] Defamation (13)
[ ] Fraud (16)
[ ] Intellectual property (19)
[ ] Professional negligence (25)
[ ] Other non-PI/PD/WD tort (35)

**Employment**
[ ] Wrongful termination (36)
[ ] Other employment (15)

**Contract**
[ ] Breach of contract/warranty (06)
[ ] Rule 3.740 collections (09)
[ ] Other collections (09)
[ ] Insurance coverage (18)
[ ] Other contract (37)

**Real Property**
[ ] Eminent domain/Inverse condemnation (14)
[ ] Wrongful eviction (33)
[ ] Other real property (26)

**Unlawful Detainer**
[ ] Commercial (31)
[ ] Residential (32)
[ ] Drugs (38)

**Judicial Review**
[ ] Asset forfeiture (05)
[ ] Petition re: arbitration award (11)
[ ] Writ of mandate (02)
[ ] Other judicial review (39)

**Provisionally Complex Civil Litigation (Cal. Rules of Court, rules 3.400–3.403)**
[ ] Antitrust/Trade regulation (03)
[ ] Construction defect (10)
[ ] Mass tort (40)
[ ] Securities litigation (28)
[ ] Environmental/Toxic tort (30)
[ ] Insurance coverage claims arising from the above listed provisionally complex case types (41)

**Enforcement of Judgment**
[ ] Enforcement of judgment (20)

**Miscellaneous Civil Complaint**
[ ] RICO (27)
[ ] Other complaint (not specified above) (42)

**Miscellaneous Civil Petition**
[ ] Partnership and corporate governance (21)
[ ] Other petition (not specified above) (43)

2. This case [x] is [ ] is not complex under rule 3.400 of the California Rules of Court. If the case is complex, mark the factors requiring exceptional judicial management:
   a. [ ] Large number of separately represented parties
   b. [x] Extensive motion practice raising difficult or novel issues that will be time-consuming to resolve
   c. [x] Substantial amount of documentary evidence
   d. [ ] Large number of witnesses
   e. [ ] Coordination with related actions pending in one or more courts in other counties, states, or countries, or in a federal court
   f. [x] Substantial postjudgment judicial supervision

BY FAX

3. Remedies sought (check all that apply): a. [x] monetary b. [x] nonmonetary; declaratory or injunctive relief c. [x] punitive
4. Number of causes of action (specify): (1) Unfair Competition; (2) Viol. of CLRA; (3) False Advertising (Bus & Prof Code § 17500)
5. This case [x] is [ ] is not a class action suit.
6. If there are any known related cases, file and serve a notice of related case. (You may use form CM-015.)

Date: March 10, 2021

Jeffrey D. Kaliel
(TYPE OR PRINT NAME)                              ▶ /s/ JDK
                                                  (SIGNATURE OF PARTY OR ATTORNEY FOR PARTY)

**NOTICE**
- Plaintiff must file this cover sheet with the first paper filed in the action or proceeding (except small claims cases or cases filed under the Probate Code, Family Code, or Welfare and Institutions Code). (Cal. Rules of Court, rule 3.220.) Failure to file may result in sanctions.
- File this cover sheet in addition to any cover sheet required by local court rule.
- If this case is complex under rule 3.400 et seq. of the California Rules of Court, you must serve a copy of this cover sheet on all other parties to the action or proceeding.
- Unless this is a collections case under rule 3.740 or a complex case, this cover sheet will be used for statistical purposes only.

Page 1 of 2

Form Adopted for Mandatory Use
Judicial Council of California
CM-010 [Rev. July 1, 2007]

**CIVIL CASE COVER SHEET**

Cal. Rules of Court, rules 2.30, 3.220, 3.400–3.403, 3.740;
Cal. Standards of Judicial Administration, std. 3.10
www.courts.ca.gov

**SUM-100**

# SUMMONS
## (CITACION JUDICIAL)

**NOTICE TO DEFENDANT:**
*(AVISO AL DEMANDADO):*
CHICK-FIL-A, INC., and DOES 1 - 50, inclusive

**YOU ARE BEING SUED BY PLAINTIFF:**
*(LO ESTÁ DEMANDANDO EL DEMANDANTE):*
RONALD ORTEGA, on behalf of himself and all others similarly situated

**FOR COURT USE ONLY**
*(SOLO PARA USO DE LA CORTE)*



NOTICE! You have been sued. The court may decide against you without your being heard unless you respond within 30 days. Read the information below.

You have 30 CALENDAR DAYS after this summons and legal papers are served on you to file a written response at this court and have a copy served on the plaintiff. A letter or phone call will not protect you. Your written response must be in proper legal form if you want the court to hear your case. There may be a court form that you can use for your response. You can find these court forms and more information at the California Courts Online Self-Help Center (*www.courtinfo.ca.gov/selfhelp*), your county law library, or the courthouse nearest you. If you cannot pay the filing fee, ask the court clerk for a fee waiver form. If you do not file your response on time, you may lose the case by default, and your wages, money, and property may be taken without further warning from the court.

There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may want to call an attorney referral service. If you cannot afford an attorney, you may be eligible for free legal services from a nonprofit legal services program. You can locate these nonprofit groups at the California Legal Services Web site (*www.lawhelpcalifornia.org*), the California Courts Online Self-Help Center (*www.courtinfo.ca.gov/selfhelp*), or by contacting your local court or county bar association. NOTE: The court has a statutory lien for waived fees and costs on any settlement or arbitration award of $10,000 or more in a civil case. The court's lien must be paid before the court will dismiss the case.

*¡AVISO! Lo han demandado. Si no responde dentro de 30 días, la corte puede decidir en su contra sin escuchar su versión. Lea la información a continuación.*

*Tiene 30 DÍAS DE CALENDARIO después de que le entreguen esta citación y papeles legales para presentar una respuesta por escrito en esta corte y hacer que se entregue una copia al demandante. Una carta o una llamada telefónica no lo protegen. Su respuesta por escrito tiene que estar en formato legal correcto si desea que procesen su caso en la corte. Es posible que haya un formulario que usted pueda usar para su respuesta. Puede encontrar estos formularios de la corte y más información en el Centro de Ayuda de las Cortes de California (www.sucorte.ca.gov), en la biblioteca de leyes de su condado o en la corte que le quede más cerca. Si no puede pagar la cuota de presentación, pida al secretario de la corte que le dé un formulario de exención de pago de cuotas. Si no presenta su respuesta a tiempo, puede perder el caso por incumplimiento y la corte le podrá quitar su sueldo, dinero y bienes sin más advertencia.*

*Hay otros requisitos legales. Es recomendable que llame a un abogado inmediatamente. Si no conoce a un abogado, puede llamar a un servicio de remisión a abogados. Si no puede pagar a un abogado, es posible que cumpla con los requisitos para obtener servicios legales gratuitos de un programa de servicios legales sin fines de lucro. Puede encontrar estos grupos sin fines de lucro en el sitio web de California Legal Services, (www.lawhelpcalifornia.org), en el Centro de Ayuda de las Cortes de California, (www.sucorte.ca.gov) o poniéndose en contacto con la corte o el colegio de abogados locales. AVISO: Por ley, la corte tiene derecho a reclamar las cuotas y los costos exentos por imponer un gravamen sobre cualquier recuperación de $10,000 ó más de valor recibida mediante un acuerdo o una concesión de arbitraje en un caso de derecho civil. Tiene que pagar el gravamen de la corte antes de que la corte pueda desechar el caso.*

The name and address of the court is:
*(El nombre y dirección de la corte es):* Sacramento County Superior Court
720 9th Street
Sacramento, CA 95814

CASE NUMBER: *(Número del Caso):*

The name, address, and telephone number of plaintiff's attorney, or plaintiff without an attorney, is: *(El nombre, la dirección y el número de teléfono del abogado del demandante, o del demandante que no tiene abogado, es):*

Jeffrey D. Kaliel, Kaliel Gold PLLC, 1100 15th Street NW, 4th Floor, Washington DC 20005; (202) 350-4783; jkaliel@kalielgold.com

| DATE: | Clerk, by | , Deputy |
|---|---|---|
| *(Fecha)* | *(Secretario)* | *(Adjunto)* |

(For proof of service of this summons, use Proof of Service of Summons *(form POS-010).*)
*(Para prueba de entrega de esta citación use el formulario* Proof of Service of Summons, *(POS-010)).*

[SEAL]

**NOTICE TO THE PERSON SERVED:** You are served
1. ☐ as an individual defendant.
2. ☐ as the person sued under the fictitious name of *(specify):*
3. ☒ on behalf of *(specify):*
   under: ☒ CCP 416.10 (corporation)     ☐ CCP 416.60 (minor)
   ☐ CCP 416.20 (defunct corporation)     ☐ CCP 416.70 (conservatee)
   ☐ CCP 416.40 (association or partnership)     ☐ CCP 416.90 (authorized person)
   ☐ other *(specify):*
4. ☐ by personal delivery on *(date):*

Page 1 of 1

Form Adopted for Mandatory Use
Judicial Council of California
SUM-100 [Rev. July 1, 2009]

**SUMMONS**

Code of Civil Procedure §§ 412.20, 465
www.courts.ca.gov

Jeffrey D. Kaliel (CA Bar No. 238293)
jkaliel@kalielpllc.com
Sophia Goren Gold (CA Bar No. 307971)
sgold@kalielpllc.com
KALIEL PLLC
1100 15th Street NW, 4th Floor
Washington, D.C. 20005
Tel: (202) 350-4783

*Attorneys for Plaintiff
and the Proposed Class*

## SUPERIOR COURT OF CALIFORNIA

## COUNTY OF SACRAMENTO

| | |
|---|---|
| RONALD ORTEGA, on behalf of himself and all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>CHICK-FIL-A, INC., and DOES 1 - 50, inclusive,<br><br>Defendant. | Case No.<br><br>**CLASS ACTION**<br><br>**DECLARATION OF PLAINTIFF RONALD ORTEGA REGARDING PROPER VENUE UNDER THE CONSUMER LEGAL REMEDIES ACT, CALIFORNIA CIVIL CODE § 1780(D)** |

BY FAX

DocuSign Envelope ID: 9341-9ABB-2067-4D0E-A921-CB10A3D3733A

## DECLARATION OF RONALD ORTEGA

I, Ronald Ortega, state and declare as follows:

1. I have personal knowledge of the matters stated herein except as to those matters stated on information and belief, which I believe to be true.

2. If called and sworn as a witness, I could and would testify truthfully and competently to the matters stated herein.

3. I am a named Plaintiff in the above-captioned action and submit this Declaration pursuant to California Civil Code section 1780(d).

4. I currently reside in Sacramento, California, located in Sacramento county, California.

5. I am informed and believe Chick-fil-A, Inc. is registered with the California Secretary of State to do sufficient business with Sacramento county and otherwise conducts business in Sacramento county. Accordingly, Sacramento county is a proper place for the trial of this action under California Civil Code section 1780(d), and this action is properly commenced in this Court.

I declare under penalty of perjury, under the laws of the State of California that the foregoing is true and correct.

3/10/2021

Executed this \_\_\_\_ day of March, 2021 at \_\_\_10_____, California.

*DocuSigned by:*
*Ronald Ortega*
F97E304B43C7464...

Ronald Ortega

- 4 -

Declaration of Plaintiff Ronald Ortega Regarding Proper Venue Under the CLRA

Jeffrey D. Kaliel (CA Bar No. 238293)
jkaliel@kalielpllc.com
Sophia Goren Gold (CA Bar No. 307971)
sgold@kalielpllc.com
**KALIEL PLLC**
1100 15th Street NW, 4th Floor
Washington, D.C. 20005
Tel: (202) 350-4783

*Attorneys for Plaintiff
and the Proposed Class*

RECEIVED
CIVIL DROP BOX
2021 MAR 11 AM 11: 46
SUPERIOR COURT
OF CALIFORNIA
SACRAMENTO COUNTY

# SUPERIOR COURT OF CALIFORNIA

## COUNTY OF SACRAMENTO

| | |
|---|---|
| RONALD ORTEGA, on behalf of himself and all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>CHICK-FIL-A, INC., and DOES 1- 50, inclusive,<br><br>Defendant. | Case No.<br><br>**CLASS ACTION**<br><br>**DECLARATION OF PLAINTIFF RONALD ORTEGA REGARDING PROPER VENUE UNDER THE CONSUMER LEGAL REMEDIES ACT, CALIFORNIA CIVIL CODE § 1780(D)** |

BY FAX

---

Declaration of Plaintiff Ronald Ortega Regarding Proper Venue Under the CLRA
- 5 -

Plaintiff RONALD ORTEGA, on behalf of himself and all others similarly situated, complains and alleges upon information and belief based, among other things, upon the investigation made by Plaintiff and through his attorneys as follows:

## NATURE OF ACTION

1.   This is a proposed class action seeking monetary damages, restitution, and injunctive and declaratory relief from Defendant Chick-fil-A, Inc. ("Defendant" or "Chick-fil-A"), arising from its deceptive and untruthful promises to provide a flat, low-price delivery fee on food deliveries ordered through is app and website.

2.   Since the beginning of the COVID-19 pandemic, Chick-fil-A has moved aggressively into the food delivery business, exploiting an opportunity presented by Americans' reduced willingness to leave their homes. To appeal to consumers in a crowded food delivery marketplace, Chick-fil-A has promised its customers low-price delivery in its mobile application and on its website, usually in the amount of $3.99.

3.   These representations, however, are false, because that is not the true cost of having food delivered by Chick-fil-A. In fact, Chick-fil-A imposes hidden delivery charges on its customers in addition to the low "Delivery Fee" represented in its app and on its website.

4.   On delivery orders only, Chick-fil-A secretly marks up food prices for delivery orders by a hefty 25-30%. In other words, the identical order of a 30-count chicken nuggets costs approximately $5-6 more when ordered for delivery than when ordered via the same mobile app for pickup, or when ordered in-store.

5.   This hidden delivery upcharge makes Chick-fil-A's promise of low-cost, $3.99 delivery patently false. The true delivery costs are obscured, as described above, and far exceed its express representation that its "Delivery Fee" is only $3.99.

6.   By falsely marketing a quantified, low-cost delivery charge, Chick-fil-A deceives consumers into making online food purchases they otherwise would not make.

7.   Chick-fil-A misrepresents the nature of the delivery charges assessed on the Chick-fil-A mobile application and the website, by issuing in-app and online marketing materials that fail to correct reasonable understandings of its low-cost delivery promises, and that misrepresent the actual costs of the

2
CLASS ACTION COMPLAINT
- 6 -

delivery service.

8. Specifically, Chick-fil-A omits and conceals material facts about the Chick-fil-A delivery service, never once informing consumers in any disclosure, at any time, that the use of the delivery service causes a substantial increase in food prices.

9. Hundreds of thousands of Chick-fil-A customers like Plaintiff have been assessed hidden delivery charges they did not bargain for.

10. Consumers like Plaintiff reasonably understand Chick-fil-A's express "Delivery Fee" representation to disclose the total additional cost they will pay as a result of having their food delivered, as opposed to ordering online and picking up food in person, or ordering and picking up food in person.

11. By unfairly obscuring its true delivery costs, Chick-fil-A deceives consumers and gains an unfair upper hand on competitors that fairly disclose their true delivery charges. For example, other restaurants such as Del Taco and El Pollo Loco both offer delivery services through their app and website. But unlike Chick-fil-A, Del Taco and El Pollo Loco fairly and prominently represent their true delivery charges.

12. Plaintiff seeks damages and, among other remedies, injunctive relief that fairly allows consumers to decide whether they will pay Chick-fil-A's delivery mark-ups.

**PARTIES**

13. Plaintiff Ronald Ortega is a citizen of the State of California who resides in Sacramento, California.

14. Defendant, Chick-fil-A Inc. is incorporated in Georgia and maintains its principal business offices in Atlanta, Georgia.

**JURISDICTION AND VENUE**

15. This Court has jurisdiction over Defendant and the claims set forth below pursuant to Code of Civil Procedure § 410.10 and the California Constitution, Article VI § 10, because this case is a cause not given by statute to the other trial courts.

16. Plaintiff is informed and believes that the State of California has personal jurisdiction over the Defendant named in the action because Defendant is a corporation authorized to conduct and does conduct business in this State. Defendant maintains its corporate headquarters in Georgia, but is

3

CLASS ACTION COMPLAINT

registered with the California Secretary of State to do sufficient business with sufficient minimum contacts in California, and/or otherwise intentionally avails itself of the California market through the ownership and operation of numerous restaurant locations throughout California, including in the County of Sacramento, which has caused both obligations and liability of Defendant to arise in this County.

17. The amount in controversy exceeds the jurisdictional minimum of this Court.

## COMMON FACTUAL ALLEGATIONS

**A. Food Delivery Services Increase in Popularity, and then Explode in Popularity During the Pandemic.**

18. In 2018, the online food delivery industry was an astounding $82 billion in gross revenue and projected to exceed $200 billion by 2025.[1]

19. US Foods reports that the average American consumer has two food delivery apps installed on their mobile phone and uses those apps three times per month.[2]

20. The online food delivery industry predominately influences the country's most financially vulnerable populations. A nationwide research study conducted by Zion & Zion reveals that the largest user markets for online delivery food services are the young and the poor.[3] During a 90-day timeframe, 63% of consumers between the ages of 18 and 29 used a multi-restaurant delivery website or app service, followed by 51% of consumers between the ages of 30 to 44.[4] The study also demonstrated that the "less income a consumer earns, the more likely the consumer is to take advantage of restaurant delivery services," as those earning less than $10,000 per year ordered online delivery the most (51.6%).[5]

21. Put plainly, the allure for online food delivery services has historically been based upon

---

[1] See Frost & Sullivan, *$9.6 Billion in Investments Spurring Aggressive Expansion of Food Delivery Companies*, October 25, 2019, accessible at https://ww2.frost.com/news/press-releases/9-6-billion-in-investments-spurring-aggressive-expansion-of-food-delivery-companies/, last accessed January 19, 2021.

[2] See US Foods, *New Study Shows What Consumers Crave in a Food Delivery Service*, 2019, accessible at https://www.usfoods.com/our-services/business-trends/2019-food-delivery-statistics.html, last accessed January 19, 2021.

[3] See Aric Zion and Thomas Hollman, Zion & Zion Research Study, *Usage and Demographics of Food Delivery Apps*, accessible at https://www.zionandzion.com/research/food-delivery-apps-usage-and-demographics-winners-losers-and-laggards/, last accessed January 19, 2021.

[4] *Id.*

[5] *Id.*

4

CLASS ACTION COMPLAINT
- 8 -

pure convenience. A 2019 Gallup study of third-party delivery services companies like GrubHub, DoorDash, and Uber Eats reported 72% of customers order online food delivery because they don't want to leave their house; 50% so that they can continue with their ongoing activities; and 41% to avoid bad weather.[6]

22. According to data compiled by Yelp, food delivery orders have *doubled* since the COVID-19 outbreak began.[7]

23. The arrival of the unprecedented COVID-19 pandemic escalated the value of online food delivery services from one of pure convenience to that of a comforting necessity for many consumers who are sick, in a high-risk population group for COVID-19, or simply do not feel safe to leave their homes and venture out into the public to purchase food during quarantine.

24. In its 2019 Economic Report conducted by research firm Technomic, DoorDash reported that 86% of customers agreed that DoorDash played an important role in helping them access food during the pandemic and 77% of consumers increased their use of third-party delivery services during this time.[8] Indeed, amidst the uncertainty of the novel virus, 68% of consumers now view ordering food online for delivery as the safer option.[9]

25. The era of COVID-19 undoubtedly caused a significant revenue boom for third party delivery services. SEC filings indicate that the top four U.S. food-delivery apps (DoorDash, Uber Eats, GrubHub, and Postmates) collectively experienced a *$3 billion increase* in revenue in just two quarters, April through September, following the enactment of shelter-in-place restrictions throughout the

---

[6] *See* Sean Kashanchi, Gallup, *Third-Party Delivery Will Grow; Is Your Restaurant Ready?*, May 6, 2019, accessible at https://www.gallup.com/workplace/248069/third-party-delivery-grow-restaurant-ready.aspx, last accessed January 19, 2021.

[7] *See* Tal Axelrod, The Hill, *Yelp: Delivery and take-out twice as popular as usual amid coronavirus,* March 20, 2020, available at https://thehill.com/policy/technology/488749-yelp-delivery-and-take-out-twice-as-popular-as-usual-amid-coronavirus, last accessed January 19, 2021.

[8] *See* Technomic and DoorDash, 2019 Economic Impact Report, *The Impact of DoorDash on Economic Activity and Restaurant Resilience*, available at https://doordashimpact.com/media/2019-Economic-Impact-Report.pdf, last accessed January 19, 2021.

[9] *Id.*

5
CLASS ACTION COMPLAINT

1   nation.[10]

2   26.  The ramp up in utilization of food delivery services also had a massive positive impact on restaurant owners who were quickly on the brink of facing permanent closures during lockdown: 67% of restaurant operators said DoorDash was crucial to their business during COVID-19 and 65% say they were actually able to *increase* profits during this time because of DoorDash.

27.  In the wake of the food delivery surge, Consumer Reports highlighted the need for fee transparency for consumers who use these apps and services.[11] A research team investigated food delivery companies and the report measured their compliance with new rules regarding fees enacted in seven US cities aimed at protecting consumers and businesses during the pandemic. It found that these companies continued to not comply with the new ordinances and continued to "employ design practices that obfuscate fees." They concluded that "[c]onsumers deserve to have informed choices to understand what they are being charged for *and* how their dollars spent impacts the restaurants they support and patronize in their communities."

**B.  Chick-fil-A's App and Website Fails to Bind Users to Any Terms of Service.**

28.  When a consumer downloads the Chick-fil-A app, or uses the Chick-fil-A website, he may create an account in order to place an order for delivery or pickup.

29.  In order to do so, a user enters in a name and contact information.

30.  While the account creation screen contains a small hyperlink to view Chick-fil-A's Terms of Service and Privacy Notice, users are not required to affirmatively consent to such terms, such as by clicking or checking a box.

**C.  Chick-fil-A Prominently and Plainly Represents a Flat $3.99 "Delivery Fee" on its App and Website.**

31.  Beginning in early 2020, Chick-fil-A began prominently featuring low-cost delivery

---

[10] *See* Levi Sumagaysay, Market Watch, *The pandemic has more than doubled food-delivery apps' business. Now what?*, last updated November 27, 2020, available at https://www.marketwatch.com/story/the-pandemic-has-more-than-doubled-americans-use-of-food-delivery-apps-but-that-doesnt-mean-the-companies-are-making-money-11606340169, last accessed January 19, 2021.

[11] *See* Consumer Reports, *Collecting Receipts: Food Delivery Apps & Fee Transparency*, September 29, 2020, accessible at https://digital-lab-wp.consumerreports.org/wp-content/uploads/2020/09/Food-delivery_-Report.pdf, last accessed January 19, 2021.

6

CLASS ACTION COMPLAINT
- 10 -

promises on its mobile application and on its website.

32. Such representations often are made on the home screen of the app or website, and were always made on the check-out screen of the app and website, prior to the finalization of an order. On that screen, Chick-fil-A promised a flat "Delivery Fee," usually in the amount of $3.99.

33. Specifically, for supposed "$3.99 Delivery Fee" orders, the order finalization screen states:

> Subtotal: [representing the cost of the food selected]
>
> Tax: [representing sales tax]
>
> Delivery Fee: $3.99
>
> Tip:
>
> Total: [adding up the above]

34. In short, there was no way for Plaintiff or other users of the Chick-fil-A mobile application or website to *avoid* seeing Chick-fil-A's promises of a flat fee, $3.99 delivery charge.

**D.   Chick-fil-A Omits and Conceals Material Facts About the Costs of the Chick-fil-A Delivery Service.**

35. But those disclosures were false and misleading, and the delivery charge was not, in fact, $3.99.

36. Chick-fil-A furtively marked up the cost of food reflected in the "Subtotal"—adding a hefty 25-30% to the cost of the food items ordered for delivery. Chick-fil-A did not and does not make similar markups for identical food items ordered via the same app or website, where such items are ordered for pickup instead of delivery.

37. Chick-fil-A omitted this material fact from its app and website disclosures, never informing users of this secret markup.

38. This secret markup—which Chick-fil-A *only* applies to delivery orders—is a hidden delivery fee. This alone renders false Chick-fil-A's promise of a flat, low-cost delivery fee of $3.99, which is made repeatedly in the app and the website, and then again in the "Delivery Fee" line item on the order screen.

7

39. In short, the "Delivery Fee" is not actually $3.99. The actual "Delivery Fee"—the extra charge for having food delivered as opposed to picking it up—is the listed "Delivery Fee" *plus* the hidden food markup applied exclusively to delivery orders.

40. Chick-fil-A does not inform consumers the true costs of its delivery service and it misrepresents its "Delivery Fee" as $3.99, when in fact that cost is actually much higher.

**E.  Other Restaurant Industry Actors Disclose Delivery Fees Fairly and Expressly.**

41. By unfairly obscuring its true delivery costs, Chick-fil-A deceives consumers and gains an unfair upper hand on competitors that fairly disclose their true delivery charges. For example, other restaurants like Del Taco and El Pollo Loco both offer delivery services through their app and website. But unlike Chick-fil-A, Del Taco and El Pollo Loco fairly and prominently represent their true delivery charges.

42. For example, Del Taco does not mark-up food charges for delivery orders through its app. Instead, for delivery orders its ordering screen presents the following:

Subtotal:

Tax:

Delivery Charge:

Tip:

43. All line-item amounts are **identical** for delivery and pick-up orders, except for the plainly and fairly disclosed delivery charge—allowing consumers to understand the true cost of the delivery service.

44. Similarly, El Pollo Loco does not mark-up food charges for delivery orders through its app. Instead, for delivery orders its ordering screen presents the following:

Subtotal:

Delivery Charge:

Tax:

45. All line-item amounts are **identical** for delivery and pick-up orders, except for the plainly and fairly disclosed delivery charge—allowing consumers to understand the true cost of the delivery

8

1 service.

2     46. Lastly, although Instacart, the grocery delivery service, does mark-up item charges for delivery orders made through its app, it provides an express warning to consumers that the item prices listed on its app are "higher than in-store prices." Instacart's clear disclaimer is made visible to consumers before they place their orders and allows consumers to understand that they are paying a higher price for utilizing the delivery service, as opposed to what they would pay had they purchased the same items in-store.

### F. Plaintiff's Experience

    47. Plaintiff used the Chick-fil-A app to make a purchase of food on January 29, 2021, in the total amount of $28.51.

    48. When using the app, and prior to placing his order, the Chick-fil-A app stated that the Delivery Fee was $3.99.

    49. However, the cost of the food ordered by Plaintiff bore a hidden delivery fee markup. To illustrate, Chick-fil-A charged Plaintiff $20.39 for a 30-count of Chick-fil-A nuggets.

    50. Upon information and belief, the same item would have cost Plaintiff 25-30% less than what he paid had he picked it up from the Chick-fil-A location instead.

    51. Plaintiff would not have made the purchase if he had known the Chick-fil-A delivery fee was not in fact $3.99.

    52. If he had known the true delivery fee, he would have chosen another method for receiving food from Chick-fil-A or ordered food from another provider.

## CLASS ALLEGATIONS

    53. Pursuant to California Code of Civil Procedure § 382, Plaintiff brings this action on behalf of himself and a Class of similarly situated persons defined as follows:

> All consumers in California who, within the applicable statute of limitations preceding the filing of this action to the date of class certification, ordered food delivery through the Chick-fil-A mobile app or website, and were assessed higher delivery charges than represented.

    54. Excluded from the Class are Defendant, any entities in which they have a controlling interest, any of their parents, subsidiaries, affiliates, officers, directors, employees and members of such

persons' immediate families, and the presiding judge(s) in this case, and their staff. Plaintiff reserves the right to expand, limit, modify, or amend this class definition, including the addition of one or more subclasses, in connection with his motion for class certification, or at any other time, based upon, *inter alia,* changing circumstances and/or new facts obtained during discovery.

55. **Numerosity**: At this time, Plaintiff does not know the exact size of the Class; however, due to the nature of the trade and commerce involved, Plaintiff believes that the Class members are well into the thousands, and thus are so numerous that joinder of all members is impractical. The number and identities of Class members is administratively feasible and can be determined through appropriate discovery in the possession of the Defendant.

56. **Commonality**: There are questions of law or fact common to the Class, which include, but are not limited to the following:

    a. Whether during the class period, Defendant deceptively represented Delivery Fees on food deliveries ordered through the Chick-fil-A website and mobile app;

    b. Whether Defendant's alleged misconduct misled or had the tendency to mislead consumers;

    c. Whether Defendant engaged in unfair, unlawful, and/or fraudulent business practices under the laws asserted;

    d. Whether Defendant's alleged conduct constitutes violations of the laws asserted;

    e. Whether Plaintiff and members of the Class were harmed by Defendant's misrepresentations;

    f. Whether Plaintiff and the Class have been damaged, and if so, the proper measure of damages; and

    g. Whether an injunction is necessary to prevent Defendant from continuing to deceptively represent low-price, flat delivery fees on food deliveries ordered through the Chick-fil-A website and mobile app.

57. **Typicality**: Like Plaintiff, many other consumers ordered food for delivery from Chick-fil-A's website or mobile app, believing delivery to be the flat fee represented based on Defendant's representations. Plaintiff's claims are typical of the claims of the Class because Plaintiff and each Class

member was injured by Defendant's false representations about the true nature of the delivery fee. Plaintiff and the Class have suffered the same or similar injury as a result of Defendant's false, deceptive and misleading representations. Plaintiff's claims and the claims of members of the Class emanate from the same legal theory, Plaintiff's claims are typical of the claims of the Class, and, therefore, class treatment is appropriate.

58. **Adequacy of Representation:** Plaintiff is committed to pursuing this action and has retained counsel competent and experienced in prosecuting and resolving consumer class actions. Plaintiff will fairly and adequately represent the interests of the Class and does not have any interests adverse to those of the Class.

59. **The Proposed Class and Satisfies the Prerequisites for Injunctive Relief.** Defendant has acted or refused to act on grounds generally applicable to the Class, thereby making appropriate final injunctive and equitable relief with respect to the Class as a whole. Plaintiff remains interested in ordering food for delivery through Chick-fil-A's website and mobile app; there is no way for him to know when or if Defendant will cease deceptively misrepresenting the cost of delivery.

60. Specifically, Defendant should be ordered to cease from representing their delivery service as a low-price, flat delivery fee and to disclose the true nature of their delivery fee.

61. Defendant's ongoing and systematic practices make declaratory relief with respect to the Class appropriate.

62. **The Proposed Class Satisfies the Prerequisites for Damages.** The common questions of law and fact enumerated above predominate over questions affecting only individual members of the Class, and a class action is the superior method for fair and efficient adjudication of the controversy. The likelihood that individual members of the Class will prosecute separate actions is remote due to the extensive time and considerable expense necessary to conduct such litigation, especially when compared to the relatively modest amount of monetary, injunctive, and equitable relief at issue for each individual Class member.

///

///

///

# CAUSES OF ACTION

## FIRST CLAIM FOR RELIEF
### Violation of California's Unfair Competition Law ("UCL")
### Cal. Bus. & Prof. Code § 17200, *et seq.*

63. Plaintiff re-alleges and incorporates the preceding allegations by reference as if fully set forth herein.

64. California Business & Professions Code § 17200 prohibits acts of "unfair competition," including any "unlawful, unfair or fraudulent business act or practice." Chick-fil-A's conduct related to deceptively representing that it provides a flat "Delivery Fee" of $3.99 on food deliveries ordered through its website and mobile app violates each of the statute's "unfair," "unlawful," and "fraudulent" prongs.

65. The UCL imposes strict liability. Plaintiff need not prove that Chick-fil-A intentionally or negligently engaged in unlawful, unfair, or fraudulent business practices—but only that such practices occurred.

66. A business act or practice is "unfair" under the UCL if it offends an established public policy or is immoral, unethical, oppressive, unscrupulous, or substantially injurious to consumers, and that unfairness is determined by weighing the reasons, justifications, and motives of the practice against the gravity of the harm to the alleged victims.

67. A business act or practice is "fraudulent" under the UCL if it is likely to deceive members of the public.

68. A business act or practice is "unlawful" under the UCL if it violates any other law or regulation.

69. Chick-fil-A committed unfair and fraudulent business acts and practices in violation of Cal. Bus. & Prof. Code § 17200, *et seq.*, by affirmatively and knowingly misrepresenting on its website and mobile app that it provides a flat $3.99 "Delivery Fee" for food orders, when, in reality, it hides delivery charges through hidden food markups by 25-30% applied exclusively to delivery orders.

///

///

70. Defendant's acts and practices offend an established public policy of fee transparency in the marketplace, and constitute immoral, unethical, oppressive, and unscrupulous activities that are substantially injurious to consumers.

71. The harm to Plaintiff and the Class outweighs the utility of Defendant's practices. There were reasonably available alternatives to further Defendant's legitimate business interests, other than the misleading and deceptive conduct described herein.

72. Defendant's conduct also constitutes an "unlawful" act under the UCL because, as detailed in Plaintiff's Second Claim for Relief below, it also constitutes a violation of sections 1770(a)(5) and (a)(9) of the California Consumer Legal Remedies Act ("CLRA"), Cal. Civ. Code § 1750, *et seq., infra,* in that Chick-fil-A deceptively represents that it provides a flat, low-price "Delivery Fee" for food orders made on its website or mobile app; in reality, however, this marketing message is false because Chick-fil-A's use of the delivery service causes a substantial increase in food prices.

73. Chick-fil-A's business practices have misled Plaintiff and the proposed Class and will continue to mislead them in the future.

74. Plaintiff relied on Defendant's misrepresentations about the falsely advertised cost of delivery in choosing to utilize the Chick-fil-A food delivery service in ordering food from Defendant's website or mobile app.

75. By falsely marketing the true costs of food delivery, Chick-fil-A deceived Plaintiff and Class members into making online food purchases they otherwise would not make.

76. Had Plaintiff known the truth of the delivery service fee, *i.e.,* that Chick-fil-A's hidden food markups were in all reality "delivery fees," he would have chosen another method for receiving food from Chick-fil-A or ordered food from another provider.

77. As a direct and proximate result of Chick-fil-A's unfair, fraudulent, and unlawful practices, Plaintiff and Class members suffered and will continue to suffer actual damages. Defendant's fraudulent conduct is ongoing and present a continuing threat to Class members that they will be deceived into ordering food for delivery under the false belief that delivery was $3.99.

78. As a result of its unfair, fraudulent, and unlawful conduct, Chick-fil-A has been unjustly enriched and should be required to disgorge its unjust profits and make restitution to Plaintiff and Class members pursuant to Cal. Bus. & Prof. Code § 17203 and 17204.

## SECOND CLAIM FOR RELIEF
### Violation of California's Consumer Legal Remedies Act ("CLRA")
### Cal. Civ. Code § 1750, *et seq.*

79. Plaintiff re-alleges and incorporates the preceding allegations by reference as if fully set forth herein.

80. This cause of action is brought pursuant to the Consumers Legal Remedies Act (CLRA), California Civil Code § 1750, *et seq.* Plaintiff and each member of the proposed Class are "consumers" as defined by California Civil Code § 1761(d). Defendant's sale of food products to consumers for delivery ordered through its website and mobile app were "transactions" within the meaning of California Civil Code § 1761(e). Defendant's online delivery service utilized by Plaintiff and the Class is a "service" within the meaning of California Civil Code § 1761(b). The food products purchased by Plaintiff and the Class are "goods" within the meaning of California Civil Code § 1761(a).

81. Defendant violated and continues to violate the CLRA by engaging in the following practices proscribed by California Civil Code § 1770(a) in transactions with Plaintiff and the Class which were intended to result in, and did result in, the sale of Chick-fil-A food orders for delivery:

    a. "Representing that goods or services have . . . characteristics . . . that they do not have" (a)(5); and

    b. "Advertising goods or services with intent not to sell them as advertised" (a)(9).

82. Specifically, Chick-fil-A advertises to customers that use of its delivery service is a flat, low-price charge, such as $3.99, but this is false because Defendant imposes hidden delivery charges to consumers by secretly marking up food items applied exclusively for delivery orders by 25-30%.

83. At no time does Chick-fil-A disclose the true nature of its delivery fee to consumers; instead, it repeatedly conceals and misrepresents this material information at several steps of the transaction process.

///

84. Pursuant to § 1782(a) of the CLRA, Plaintiff's counsel notified Defendant in writing by certified mail of the particular violations of §1770 of the CLRA and demanded that it rectify the problems associated with the actions detailed above and give notice to all affected consumers of Defendant's intent to act. If Defendant fails to respond to Plaintiff's letter or agree to rectify the problems associated with the actions detailed above and give notice to all affected consumers within 30 days of the date of written notice, as proscribed by §1782, Plaintiff will move to amend his Complaint to pursue claims for actual, punitive and statutory damages, as appropriate against Defendant. As to this cause of action, at this time, Plaintiff seeks only injunctive relief.

### THIRD CLAIM FOR RELIEF
**Violation of California's False Advertising Law ("FAL")**
**Cal. Bus. & Prof. Code §§ 17500, *et seq.***

85. Plaintiff re-alleges and incorporates the preceding allegations by reference as if fully set forth herein.

86. California's False Advertising Law ("FAL"), Cal. Bus. & Prof. Code § 17500, states that "[i]t is unlawful for any ... corporation ... with intent ... to dispose of ... personal property ... to induce the public to enter into any obligation relating thereto, to make or disseminate or cause to be made or disseminated ... from this state before the public in any state, in any newspaper or other publication, or any advertising device, or by public outcry or proclamation, or in any other manner or means whatever, including over the Internet, any statement...which is untrue or misleading and which is known, or which by the exercise of reasonable care should be known, to be untrue or misleading...."

87. Defendant's material misrepresentations and omissions alleged herein violate Bus. & Prof. Code § 17500.

88. Defendant knew or should have known that its misrepresentations and omissions were false, deceptive, and misleading.

89. Pursuant to Business & Professions Code §§ 17203 and 17500, Plaintiff and the members of the Class, on behalf of the general public, seeks an order of this Court enjoining Defendant from continuing to engage, use, or employ their practice of misrepresenting their delivery fees.

///

90. Further, Plaintiff and the members of the Class seek an order requiring Defendant to disclose such misrepresentations, and additionally request an order awarding Plaintiff restitution of the money wrongfully acquired by Defendant by means of said misrepresentations.

91. Additionally, Plaintiff and the Class members seek an order requiring Defendant to pay attorneys' fees pursuant to Cal. Civ. Code § 1021.5.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff on behalf of himself and the Class seeks judgment in an amount to be determined at trial, as follows:

(a) For an order enjoining Defendant from continuing the unlawful practices set forth above;

(b) For declaratory and injunctive relief as set forth above;

(c) For an order requiring Defendant to disgorge and make restitution of all monies it acquired by means of the unlawful practices set forth above;

(d) For compensatory damages according to proof;

(e) For punitive damages according to proof;

(f) For reasonable attorneys' fees and costs of suit;

(g) For pre-judgment interest; and

(h) Awarding such other and further relief as this Court deems just, proper and equitable.

## JURY DEMAND

Plaintiff hereby demands a jury trial on all claims so triable.

Dated: March 10, 2021         **KALIEL GOLD PLLC**

By: _____
Jeffrey D. Kaliel
Sophia G. Gold

*Attorneys for Plaintiff and the Proposed Class*